This argument will be in Case No. 2428, United States v. Parks. Mr. Jacobs, have you anything to say? Good morning, and may it please the Court. Brian Jacobs. I represent Edward Parks on appeal. I didn't represent him below. This Court should reverse the conviction or else vacate and order a new trial because the evidence was insufficient and the jury instructions were flawed. I'd like to focus first on how the jury instructions were erroneous because they failed to inform the jury of the proximate cause requirement in order to convict under the statute, Section 1201. That statute provides for an enhanced penalty, which must be found by the jury, if the death of any person results. Neither this Court nor the Supreme Court has weighed in on whether that language, if the death of any person results in Section 1201, requires a jury finding of proximate cause, but we submit that it does based on the plain language of the statute and based on other persuasive authority. Under the plain language of the statute, the word results suggests a requirement of both proximate and but-for causation. In this Court's decision in United States v. Gillette, this Court said that where there is no Supreme Court or Second Circuit decision on point, you look to the common law meaning of words like results here. Can I stop you here? We did this textual analysis in Felder in the carjacking statute context, and Felder said that it was doing a textual analysis. It was relying on the Tenth Circuit's decision in Barkholder, and it pointed out that there was the different statute, that there was the serious bodily harm provision, but that was sort of in addition to the textual analysis. So what would you have to say about Felder to rule in your favor? For several reasons, Felder is distinguishable here, Your Honor. I think, first of all, as Your Honor said, it related to a different statute, and that statute contains language that this statute, the kidnapping statute, does not. To the extent Felder relied on the Tenth Circuit's decision in Barkholder and the other controlled substances cases, those cases are distinguishable as well. For example, in the United States v. Hardin case, which is from the Seventh Circuit and is the second case in the String site in Felder, and it's one the government relies on here as well, the Seventh Circuit pointed out that the reading of results in the controlled substance context to not require proximate cause is due to the extremely hazardous nature of drug distribution, and is essentially that statute treats death as categorically foreseeable in the controlled substance context, and that is entirely different than in the kidnapping context, where bodily harm is not necessarily foreseeable. I understand that, but before that part of Felder, it said it talked about the passive voice and how Congress knows how to say but for an approximate when it means it, and so what do we do with that part of Felder? I would say that language in Felder, I mean, A, is inconsistent with Gillette, B, relates to a different, which came before Felder but was not discussed in Felder and was not addressed in the briefing there, aside from a footnote in the government's brief there that didn't point out to this Court that Gillette actually says death results incorporates the concept of proximate cause, and so the Felder Court seems to have missed that textual point, but it is limited to that statute, which does have an intent to cause bodily harm, and it also was not necessary to the holding there and could be distinguished as dicta there. There was no prejudice that Court held, so the textual analysis was really unnecessary. There was no prejudice to that defendant, and in any event, the Supreme Court has not weighed in on 1201 here. So for all those reasons, Felder is distinguishable. Different statute, the controlled substance cases themselves are distinguishable. It didn't address Gillette, and I think our analysis goes beyond the pure textual point of results and looks at the statute as a whole, which doesn't have the intent to cause death or serious bodily harm. But it does require you to take someone by force and against their will. By its very nature, that incorporates the idea that force might be used upon someone, and certainly they're unwilling. That's how kidnapping occurs. So doesn't that differentiate it then from some of the other cases? No, Your Honor. In the kidnapping context, it can be physical or psychological force, and the jury charge here used the word psychological force. This Court has made clear that kidnapping can be physical or psychological. I mean, in many kidnapping statutes where a parent takes a child out of the country or into the country against another parent's wishes, it's just the opposite of sort of physical force. It's someone who wishes the person being kidnapped well. And so I don't think the kidnapping statute is at all the same as the carjacking, which requires a very specific intent to cause death or serious bodily injury. The kidnapping statute not only says or courts have said psychological coercion is enough, but it certainly doesn't say intent to cause death or serious bodily injury. So I think it is distinguishable on that basis. And this is a rare case where a proximate cause element would have made all the difference for Mr. Parks. His primary defense was that he was not the shooter and this other individual who was the cooperator, Raekwon Carr, was the shooter. And the initial charge the district court gave really rendered, you know, the district court did rule that proximate cause is not included, but then did instruct the jury that the government's position was that Mr. Parks was the shooter. And so in that sense, the initial charge made the question of proximate cause somewhat less important. But then the jury came back with a note. And the note said, can we convict even if we don't find that he's the shooter in substance? And the district court said yes, essentially, without repeating that you need to find that the kidnapping was the cause of the death or that it was foreseeable to Mr. Parks. And the absence of those two requirements of the statute at that key moment of the trial fundamentally undermined the primary defense, the defense that he was not the shooter and resulted in the conviction. So I would submit the government cannot meet its burden of proving that the error was harmless beyond a reasonable doubt as required here. They don't even really make an effort to do so in their brief. Unless there are further questions on proximate cause, I want to turn for just the time I have left to the count three and why count three's evidence was insufficient. There, our contention is that the evidence did not prove a federal nexus. Under the Supreme Court's decision in the United States v. Fowler, the government's evidence has to show a reasonable likelihood that a relevant communication would have been made to a federal officer by the witness who, in this case, was killed. Here, the sum total of that evidence was an FBI agent's testimony where she answered yes, where the prosecutor asked her, is he, meaning the witness, someone you would have liked to talk to? And she didn't say definitely, certainly, or I saw no, she just said yes, would have liked to. Under Fowler, Fowler specifically says a mere possibility of a communication is not enough. It's not enough if a crime can be prosecuted federally. It's not enough if the FBI is involved in an investigation. You need more than a mere possibility. But the FBI cast a pretty wide net and really contacted all of the eyewitnesses. Four years after the fact, the FBI gets involved in the investigation here and interviews relevant witnesses. It will always be the case that an FBI agent would have liked to speak with someone who's passed away. If this evidence here is sufficient to establish a federal nexus, it's difficult to imagine any case where there would not be a federal nexus, where an agent wouldn't say yes, I would have liked to speak with that person who's deceased. Your argument, though, is that because kidnapping and murder are state crimes, right, that there's no reason for the FBI to be involved. But the context is drugs and guns, so there absolutely is reason to think that the FBI might be interested. I'm sorry, when you said the context is? The context is drugs and guns, and so why isn't that enough to make it likely or reasonably possible that the FBI would be interested? Because Fowler specifically discussed how many crimes such as drugs and guns can be prosecuted at both the state or federal level. And if all you require is that a case involves something that can be prosecuted federally, and Fowler says this specifically, that is not enough to establish on its own a reasonable likelihood that a relevant communication will be made. There needs to be something more, and this case does not have anything more. And I see my time is up. I've reserved some time for rebuttal. Thank you, counsel. Thank you. We'll hear from the government. Thank you, Your Honors. Good morning. May it please the Court. Assistant United States Attorney Elena Coronado for the government. There was no error, much less plain error, in the district court's jury instructions in this case. With respect to the instruction regarding the death-resulting element of kidnapping resulting in death under Section 1201A, the Court properly instructed the jury that it had to find but-for causation, but probably declined to give approximate cause instruction. And the Court made that decision based on a close reading of the statute itself, as well as the weight of the precedent, including this Court's 2021 decision in Felder, which was just being discussed a moment ago, and very persuasive authority from the Supreme Court and from nearly every other circuit court. There was also no plain error in the wording of the supplementary jury instruction, which the defendant challenges now for the first time on appeal. That was the instruction that said but for the defendant's actions rather than but for the kidnapping. The defendant actually requested that language below and may have waived that argument entirely, but even absent waiver, it certainly does not meet the plain error standard, because Parks offers no conclusive authority showing any error with that actions language, which came directly from the SAMT model instruction. And, of course, viewed in the context of the whole, the district court made abundantly clear that the death had to result from the kidnapping. And I'll also just note that throughout the government adhered to the theory, including in its supplemental summation, that Parks himself was the shooter. And then finally, overwhelming evidence established that Parks committed all three crimes of which he now stands convicted. Every eyewitness, the additional text message evidence, the DNA evidence, and the ballistics evidence, and the autopsy evidence, it all spoke with one voice. Parks murdered Damian Conner, Tamar Lawrence, and Devante Williams. So on death results, your friend on the other side talked about the different statutory contexts. The others have provisions specifically addressing serious bodily injury or death. And that was something that the Felder decision noted, and I'm trying to read those things together, and I was wondering what your response is to that. And also, if you could address Gillette, that would be helpful, too. Certainly. Thank you, Renner. I'll start with the second part of your question, because I do want to take the opportunity to address Gillette. So the defendant argues that Gillette is both applicable and in fact binding here. I'm just not sure that that comports with this court's 2021 Felder decision, which is the most recent statement of the applicable law. And it did not regard Gillette to be binding, at least in the federal carjacking context, even though it was part of the briefing in that case. Of course, Gillette is a 1976 case. It interpreted a very different statute, 18 U.S.C. 241. It's not clear by Gillette's own terms if it even purported to impose an across-the-board rule that would apply to any statute with the term, if death results in it. And it has been cited very little, certainly by the circuit, for that proposition. But even assuming that Gillette is applicable here, it strongly supports the government's position. And I say that for two reasons. First, Gillette doesn't actually address but-for causation. It kind of comes at it from the opposite direction. But what it says, or what the government believes it should be properly read to say, is that proximate cause is a sufficient but not a necessary precondition for causation for statutes that contain the death-resulting language. And then secondly, Gillette defines proximate cause extremely broadly, much more the way, I would submit, we define but-for causation today. So the facts of Gillette involve sort of a unique fact pattern where the defendants had threatened to kill a federal witness and to sort of ward off the perpetrators, the witness, the victim, had booby-trapped his own house and then accidentally set off the booby trap and he died in that explosion. And the key question that was raised in Gillette was whether or not the defendants could be held culpable even though they were not the, quote, immediate cause or the direct cause of the victim's death. And the court there said yes. They actually regarded the idea that a victim might booby-trap his own house and then accidentally kill himself by setting off that booby trap as reasonably foreseeable and as fulfilling the proximate cause standard. And so, you know, I would submit that even assuming the defendants, frankly, implausible proposed fact pattern that he had masterminded the kidnapping but then Carr had actually shot the victims, even assuming that were true, that was at least as reasonably foreseeable as the fact pattern in Gillette, you know, a victim booby-trapping his own house and then dying in the explosion. So I think Gillette actually is very supportive of the government's position here. And, of course— Okay. So how about Felder being sort of a different statute and the part of the statutory analysis being dicta as a response to that? So, of course, Felder did involve a different statute. It was the federal carjacking statute, and it does have different elements. But certainly I think that the statutory interpretation language is very— you know, we're talking about a substantially identical if death results language. And the formulation of the sort of transitive versus intransitive, that passive formulation of the language in Felder is exactly the same here. Death results rather than the defendant causes it. We also know that Congress can and has in many statutes that are cited in— I believe it's pages 34 and 35 of the government's brief— has in many, many statutes used proximate cause language when they want to include a proximate cause requirement. So we know Congress can do it, and so its choice here should be regarded as intentional. And then, you know, as far as the differences in whether carjacking required an intent to harm that was absent here, you know, I think just as a logical matter, I think it is in fact the case that kidnapping typically involves that intent to harm. You know, even in the psychological case, often the psychological coercion is backed up by the threat of physical harm, maybe against a loved one, something like that. But in any event, the Controlled Substances Act cases don't have that same redundancy. And in fact, I would submit that drug dealers typically don't want to kill their victims because—or their, you know, buyers, because of course it's a business transaction and they presumably have every incentive to keep the drug buyers alive. And yet, even in that Controlled Substances Act case, without the intent to kill or commit bodily harm, many courts, the 1st, 3rd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, and 11th circuits, I think it's every one but this one in the D.C. circuits, have nonetheless said that only but-for causation is required. If the Court has no further questions for the reasons cited in our brief, we ask the Court to adjourn. Actually, sorry. Yeah. Before you sit down, could you address the witness tampering piece of it? Your friend was saying that the Fowler requirement from the Supreme Court is stricter than just the fact that the government may have been— or that the federal investigators may have been interested from the context of the case. And so I was wondering, what is the federal looking at? Certainly, Your Honor. So Fowler sets a very low bar, just this mere reasonable likelihood standard. And this Court's subsequent decisions in Veles and in DINSA say that essentially what we need is an underlying federal offense plus additional appropriate evidence, and that suffices. So what is that here? And so here, we have the underlying federal offense, the kidnappings resulting in death. We also have— I mean, but that's traditionally sort of a state crime, right? So everything that overlaps you think is enough for federal? Yes, because of something, and I'll echo a comment Your Honor made a few moments ago. This was a situation where the kidnapping was very closely linked with gang activity, with a gang that did quite a lot of drug trafficking, and in particular with gun trafficking. And Mr. Parks himself, this was not merely in the vague general context of gang-related gun trafficking, but Parks himself had been charged in North Carolina with illegal gun trafficking in federal court. He was aware that he was on the radar of federal agents, so we have that entire context of the underlying crimes. We have FBI involvement in the case from day one, and FBI TFO actually reported to the scenes of the crimes, to the scenes of Congress. So under Fowler, we can look at the kind of background underlying context going back before the crime itself and after the fact what actually happened, the FBI being involved in the investigation? Yes, Your Honor. Fowler really says that so long as the possibility of a communication is not merely remote, outlandish, or simply hypothetical, the standard is satisfied. And the example Fowler gives of a remote or outlandish or simply hypothetical communication is a communication to Lithuanian law enforcement, just to give kind of some color on what we're talking about here. Certainly the communication here to federal law enforcement more than clears that bar. There was a federal investigation, a federal trial, which DINSA tells us that even the possibility that the communication could have been made to, say, a federal prosecutor should factor into the analysis. The FBI was handling the interviews of virtually everyone, but certainly a direct eyewitness to the crime. The standard is a low one, and it was met here. Thank you, counsel. Thank you, Your Honor. We'll hear a rebuttal. Thank you, Your Honor. Just a few brief responses to what my colleague said. First, as to Gillette and its relevance here, first, I'll highlight that it was relied on explicitly by the two district courts that have actually addressed Section 1201, the statute at issue here. Those courts in Mayhew and Foghorn, which we discuss in our briefing, found that proximate cause is required, and they cite Gillette for that. And Gillette's relevance is that it says expressly, we find, this is this court, we find the principle of proximate cause embodied in Section 241 through the phrase, if death results. So that phrase in Gillette is interpreted to embody proximate cause and two district courts have held that Section 1201, likewise, requires proximate cause based on Gillette. My colleague said that Gillette didn't purport to set an across-the-board rule, in her words, but neither did Felder. And my colleague pointed out that Felder is more recent, but I would suggest that that makes it more defective because it ignored the prior binding precedent in Gillette that interpreted the language death results to embody proximate cause. How about the underlying reason? I mean, the passive voice argument is more than grammar. It means that it doesn't specify. Congress chose not to specify. They word it in a way that doesn't specify the actor, the who, the how, the why. It's just the result. What's your response to that? I think that the general principle is that the phrase, if death results, does embody proximate cause, and that is what the Supreme Court suggests in Burrage, that as a general matter you do require both forms of causation where something results, the plain meaning of the word results. Now, Felder departs from that rule in the specific context of a statute that requires intent to cause death or serious bodily harm where it would be redundant to require a proximate cause requirement. But that holding, and those were Felder's words, redundant, and that holding is very specific to that statute with its intent requirement. Well, I don't understand that. I mean, the intent requirement goes to the taking of the car, right? But the death resulting doesn't necessarily have to be the taking of the car. I mean, it could happen at some other point in time, the taking of the car, right? I think the statute says if the intent is to cause death or serious bodily injury in connection with taking the car, I'm not clear if you can sever that intent requirement from the foreseeability of the ultimate death, and this Court in Felder certainly did not sever them and said it would be redundant to require proximate cause where a statute also requires intent to cause death or serious bodily harm. So I read Felder to be saying that is redundant in that context. There's no such redundancy here. And just on the last point on the Fowler issue, I would submit that my colleague did not articulate anything that takes this case out of the mere possibility of a communication with a federal officer, which Fowler said is not sufficient, and into the reasonable likelihood standard, which is low but not toothless. And I think my colleague's view would render it toothless. If there are no other questions, we'll rest on our papers. Thank you, Counsel. Thank you, Your Honor. Thank you both. We'll take the case under advisement. That concludes our arguments for today. So I'll ask the deputy to adjourn. Court stands adjourned.